# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CERBER PROPERTY sp. z.o.o. S.K.A. | § § § § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-0992-S |
| | § § | |
| TEXAS INSTRUMENTS INCORPORATED | § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Texas Instruments Incorporated's ("Defendant") Motion to Dismiss Plaintiff Cerber Property's ("Plaintiff") Complaint [ECF No. 11]. For the reasons stated below, the Motion is granted in part and denied in part.

### I. BACKGROUND

Since 1992, Plaintiff has offered security services, including alarm systems, throughout Poland. Am. Compl. ¶ 8. In or around 2013, Plaintiff began developing a new fire alarm monitoring system to comply with new regulations. *Id.* ¶ 9. The new system was to be capable of communicating via radio waves and phone lines, and its primary function was to have wireless monitoring capabilities. *Id.* As part of the product development process, Plaintiff conducted research and identified software called the ZigBee IP Smart Energy 2.0 as a wireless network option. *Id.* ¶ 10. To function, the ZigBee IP Smart Energy 2.0 had to be supported by the ZigBee IP stack. *Id.*

"ZigBee" refers to a wireless language technology that devices use to connect to one another. *Id.* ¶ 11. ZigBee is certified by the ZigBee Alliance, which is a non-profit association that, inter alia, provides open global wireless networking standards. *Id.* ¶ 12. Plaintiff alleges that Defendant either

was a member of the ZigBee Alliance or marketed its products for use with ZigBee products. *Id.* Plaintiff further alleges that Defendant is a founding member of the ZigBee Board of Directors and is a "self-described ZigBee market leader." *Id.*

To use ZigBee IP Smart Energy 2.0 in its wireless fire alarm monitoring system, Plaintiff needed to purchase a product that would allow the system to access the ZigBee IP stack. *Id.* ¶ 13. Plaintiff's research revealed that Defendant manufactured a chip, the CC2538 ("Chip"), that appeared to be a viable option. *Id.* On its website, Defendant described the Chip as having "full software support for ZigBee Smart Energy 1.x, ZigBee Smart Energy 2.0, ZigBee Light Link and ZigBee Home Automation." *Id.* ¶ 14. Defendant's website further stated, "Combined with free to use Z-Stack PRO or ZigBee IP stacks from [Defendant], the [Chip] provides the most capable and robust ZigBee solution in the market." *Id.* (emphasis omitted).

On September 20, 2013, Plaintiff contacted Defendant through the online inquiry form on Defendant's website. *Id.* ¶ 15. Plaintiff asked Defendant to confirm that the Chip had full, preinstalled software support to access and interact with the ZigBee IP stack, which, in turn, would support the development of Plaintiff's wireless fire alarm monitoring system. *Id.* On September 26, 2013, a representative of Defendant, Wojciech Nowacki, responded to Plaintiff via email. *Id.* ¶ 16. Nowacki confirmed that the Chip had the necessary software support and "indicated that the Chip had the full functionality of ZigBee IP, '(which does not have to be downloaded from an outside source, but is already preinstalled on the [C]hip).'" *Id.*

In reliance on these representations, Plaintiff ordered multiple batches of the Chip and entered into three contracts in anticipation of developing the wireless fire alarm monitoring system. *Id.* ¶ 17. Plaintiff entered into contracts with another Polish entity, Cerber Fire Security sp. z.o.o., and two subcontractors, Systemel Adam Adamcewicz ("Systemel") and GZT Telkom-Telmor sp. z.o.o. ("Telkom-Telmor"). *Id.* ¶¶ 18-19. In or around July 2014, Plaintiff allegedly discovered that the Chip

2

did not perform as Defendant had represented on its website and in the email to Plaintiff. *Id.* ¶ 21. Plaintiff claims it could not access the ZigBee IP stack from Defendant using the Chip. *Id.* According to Plaintiff, "[w]ithin a few months, [Defendant] admitted that, contrary to its representations, it does not permit customers to access its ZigBee IP stack." *Id.* ¶ 22. Specifically, Defendant informed Plaintiff that "[t]he silicon does support ZigBee IP," but Defendant "[does not] offer this as a supported software product [for customers]." *Id.* Defendant added that it planned to modify the related datasheet and public information to "make that more clear." *Id.*

As a result of the Chip's failure to operate as expected, Plaintiff could not fulfill its contractual obligations with Cerber Fire Security, and Plaintiff was forced to terminate its agreements with Systemel and Telkom-Telmor. *Id.* ¶ 24. Plaintiff subsequently brought suit against Defendant, alleging causes of action for breach of warranty and fraud.

## II. ANALYSIS

### A. *Breach of Warranty*

Defendant moves to dismiss Plaintiff's claim for breach of express warranty because Plaintiff has failed to plead facts establishing privity. Under Texas law, the elements of a cause of action for breach of express warranty are:

> (1) the defendant-seller made an express affirmation of fact or promise relating to the goods; (2) that affirmation or promise became part of the bargain; (3) the plaintiff relied upon that affirmation or promise; (4) the goods did not comply with the affirmation or promise; (5) the plaintiff was damaged by the noncompliance; and (6) the failure of the product to comply was the proximate cause of the plaintiff's injury.

*Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 815 (S.D. Tex. 2013) (citing *Berge Helene Ltd. v. GE Oil & Gas, Inc.*, 830 F. Supp. 2d 235, 255 (S.D. Tex. 2011)). Defendant contends that "[i]nherent in this formulation—that a *seller* must express an affirmation—is the inveterate

3

doctrine of privity." Def.'s Br. 5. Because Defendant was the manufacturer of the Chip, not the seller, Defendant argues that privity is lacking.

Express warranties on goods are defined by the Uniform Commercial Code ("UCC"). The version of the UCC enacted by the Texas Legislature is neutral as to the requirement of privity. *See* TEX. BUS. & COM. CODE ANN. § 2.318 ("This chapter does not provide . . . whether the buyer . . . may sue a third party other than the immediate seller for deficiencies in the quality of the goods."); *Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 81 (Tex. 1977). Matters of privity "are left to the courts for their determination." TEX. BUS. & COM. CODE ANN. § 2.318. Defendant cites several cases in support of its position that courts applying Texas law require privity for breach of express warranty claims. *See, e.g., Keith v. Stoelting*, 915 F.2d 996, 999 (5th Cir. 1990) ("Texas courts require direct privity between the plaintiff and the defendant in [horizontal privity] cases." (citation omitted));[1] *Lujan v. Tampo Mfg. Co.*, 825 S.W.2d 505, 511 (Tex. App.—El Paso 1992, no writ) ("There could be no . . . express warranty . . . unless it was made by Tampo as manufacturer/seller to Rust as buyer. Assuming that such an express warranty was made . . ., [plaintiff] would be unable to recover . . . unless she was somehow in privity with the buyer." (citation omitted)).

In its Response, Plaintiff cites several cases in support of the contrary position—that Texas law does not require privity for breach of express warranty claims. *See, e.g., PPG Indus., Inc. v. JMB/Hous. Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 90 (Tex. 2004) ("Of course, if manufacturers make representations or warranties directly to consumers, the latter may sue directly (despite the absence of privity) for breach of express warranty . . . . (citing *U.S. Pipe & Foundry Co. v. City of Waco*, 108 S.W.2d 432, 434-35 (Tex. 1937))); *US LED, Ltd. v. Nu Power Assocs., Inc.*, Civ. A. No. 4:07-CV-

---

[1] Vertical privity is "privity which includes all parties in the distribution chain from the initial supplier of the product to the ultimate purchaser." *Garcia v. Tex. Instruments*, 610 S.W.2d 456, 463 (Tex. 1980). Horizontal privity "describes the relationship between the original supplier and any non-purchasing party who uses or is affected by the product, such as the family of the ultimate purchaser or a bystander." *Id.* at 463-64 (citation omitted). The instant case involves vertical privity. Many of the cases cited by Defendant deal with horizontal privity.

4

0783, 2008 WL 4376258, at *4 (S.D. Tex. Sept. 22, 2008) (noting that Texas law does not require privity where manufacturer furnishes samples to middleman with knowledge that samples are likely to be submitted to buyer so as to induce sale).

The Court notes that there appears to be no bright-line rule regarding privity in breach of express warranty cases, and Defendant concedes as much in its Reply. *See* Reply 5 ("Texas courts are split on whether direct privity is required when seeking economic damages for breach of express warranty[,] and the Texas Supreme Court has not resolved the split."); *see also Berge Helene Ltd.*, 896 F. Supp. 2d at 598 ("[F]or vertical privity, state courts, including Texas, have introduced more uncertainty in the privity rule, looking to factors such as whether direct communications occurred between the defendant and buyer; whether the defendant was a manufacturer or component manufacturer; whether the parties were consumers or commercial entities; and whether the injury was physical or solely economic.").

The Court also notes that the vast majority of cases cited by both parties arose in either the summary judgment or trial context, when the court could better examine the facts of the particular case and apply the law and policy relevant to privity in light of those facts. At the motion to dismiss stage, by contrast, the Court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). Applying this standard, the Court finds that Plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). The Court further finds that resolution of the privity

issue is better suited for the summary judgment stage. For these reasons, the Court denies Defendant's Motion to Dismiss Plaintiff's breach of express warranty claim.

## B. *Fraud*

Next, Defendant moves to dismiss Plaintiff's fraud claim. Under Texas law, the elements of common-law fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (citations omitted). Defendant attacks only the third element, arguing that Plaintiff failed to adequately plead scienter.

When a complaint alleges fraud, the plaintiff must plead the elements of its claims with the heightened particularity required by Rule 9(b). *See, e.g., Coates v. Heartland Wireless Commc'ns, Inc.*, 26 F. Supp. 2d 910, 914 (N.D. Tex. 1998). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally" so long as the plaintiff "set[s] forth specific facts that support an inference of fraud." FED. R. CIV. P. 9(b); *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).

In support of its fraud claim, Plaintiff relies on two purported misrepresentations: (1) information contained from Defendant's website that claimed, inter alia, that the Chip came with "free to use . . . ZigBee IP stacks from [Defendant]"; and (2) an email from Nowacki that stated, inter alia, that "the connection between CC2538 and CC1200 is entirely possible, as well as the use of ZigBee IP (which does not have to be downloaded from an outside source, but is already preinstalled on the [C]hip)." Am. Compl. ¶¶ 32, 34.

6

"A statement is not fraudulent unless the maker knew it was false *when he made it* or made it recklessly without knowledge of the truth." *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 163 (Tex. 1995) (emphasis added). Here, Plaintiff has not pleaded specific facts to support its allegation that Defendant knew the misrepresentations were fraudulent at the time the representations were made. Plaintiff relies heavily on two factual allegations: (1) Defendant's admission, months after the alleged misrepresentations, that Defendant "does not permit customers to access its ZigBee IP stack" and that "the related datasheet/public information was 'in line to be modified to make that more clear'"; and (2) Defendant is "a self-described ZigBee market leader." Am. Compl. ¶¶ 22, 36.

As currently pleaded, these allegations are insufficient to support an inference that Defendant knowingly made a false representation at the time it published the datasheet or at the time Nowacki communicated with Plaintiff. In their current state, Plaintiff's pleadings do not connect Defendant's later admission to the earlier misrepresentations. Plaintiff also has not pleaded specific facts to support its alternative allegation that "[a]t a minimum, [Plaintiff] has plead[ed] sufficient facts to support a finding of recklessness." Resp. 18. Perhaps because the Amended Complaint appears to be focused on the assertion that Defendant knew its statements were false, Plaintiff has not pleaded any facts to support the notion that either statement was made "recklessly without any knowledge of the truth." *Aquaplex*, 297 S.W.3d at 774. For these reasons, the Court finds that Plaintiff has not adequately pleaded scienter and grants Defendant's Motion to Dismiss Plaintiff's fraud claim.

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendant's Motion to Dismiss. The Court denies the Motion as to Plaintiff's breach of express warranty claim. The

Court grants the Motion as to Plaintiff's fraud claim. Plaintiff has not sought leave to amend. If Plaintiff wishes to amend its fraud claim, it must seek leave to file an amended complaint by April 30, 2019. If a motion for leave to file, with the proposed amended complaint attached, is not filed by this date, Plaintiff's fraud claim will be dismissed with prejudice.

**SO ORDERED.**

SIGNED March 28, 2019.

_____
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**