# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| CERBER PROPERTY sp. z.o.o. S.K.A. | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-0992-S |
| | § | |
| TEXAS INSTRUMENTS INCORPORATED | § § § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint Pursuant to Rules 12(b)(6) and 9(b) [ECF No. 81]. For the following reasons, the Court grants the Motion.

### I. BACKGROUND

Since 1992, Plaintiff has offered security services, including alarm systems, throughout Poland. Third Am. Compl. ¶ 8. In 2013, Plaintiff began developing a new fire alarm monitoring system to comply with new regulations. *Id.* ¶ 9. The new system was to be capable of communicating via radio waves and phone lines, and its primary function was to have wireless monitoring capabilities. *Id.* As part of the product development process, Plaintiff conducted research and identified software called the ZigBee IP Smart Energy 2.0 as a wireless network option. *Id.* ¶ 10. To function, the ZigBee IP Smart Energy 2.0 had to be supported by the ZigBee IP stack. *Id.*

"ZigBee" refers to a wireless language technology that devices use to connect to one another. *Id.* ¶ 11. ZigBee is certified by the ZigBee Alliance, which is a non-profit association that, inter alia, provides open global wireless networking standards. *Id.* ¶ 12. Plaintiff alleges that Defendant either was a member of the ZigBee Alliance or marketed its products for use with ZigBee products. *Id.*

Plaintiff further alleges that Defendant is a founding member of the ZigBee Board of Directors and is a "self-described ZigBee market leader." *Id.*

To use ZigBee IP Smart Energy 2.0 in its wireless fire alarm monitoring system, Plaintiff needed to purchase a product that would allow the system to access the ZigBee IP stack. *Id.* ¶ 13. Plaintiff's research revealed that Defendant manufactured a chip, the CC2538 ("Chip"), that appeared to be a viable option. *Id.* On its website, Defendant described the Chip as having "full software support for ZigBee Smart Energy 1.x, ZigBee Smart Energy 2.0, ZigBee Light Link and ZigBee Home Automation." *Id.* ¶ 14. Defendant's website further stated, "Combined with free to use Z-Stack PRO or ZigBee IP stacks from [Defendant], the [Chip] provides the most capable and robust ZigBee solution in the market." *Id.* (emphasis omitted).

On September 20, 2013, Plaintiff contacted Defendant through the online inquiry form on Defendant's website. *Id.* ¶ 15. Plaintiff asked Defendant to confirm that the Chip had full, preinstalled software support to access and interact with the ZigBee IP stack, which, in turn, would support the development of Plaintiff's wireless fire alarm monitoring system. *Id.* On September 26, 2013, a representative of Defendant, Wojciech Nowacki, responded to Plaintiff via email. *Id.* ¶ 16. Nowacki confirmed that the Chip had the necessary software support and "indicated that the Chip had the full functionality of ZigBee IP, '(which does not have to be downloaded from an outside source, but is already preinstalled on the [C]hip).'" *Id.*

In reliance on these representations, Plaintiff ordered multiple batches of the Chip and entered into three contracts in anticipation of developing the wireless fire alarm monitoring system. *Id.* ¶ 18. Plaintiff entered into contracts with another Polish entity, Cerber Fire Security sp. z.o.o., and two subcontractors, Systemel Adam Adamcewicz ("Systemel") and GZT Telkom-Telmor sp. z.o.o. ("Telkom-Telmor"). *Id.* ¶¶ 19-20. In July 2014, Plaintiff allegedly discovered that the Chip did not perform as Defendant had represented on its website and in its email to Plaintiff. *Id.* ¶ 22. Plaintiff

claims it could not access the ZigBee IP stack from Defendant using the Chip. *Id.* According to Plaintiff, within a few months, Defendant "admitted that, contrary to its representations, it does not permit customers to access its ZigBee IP stack." *Id.* ¶ 23. Specifically, Defendant informed Plaintiff that "[t]he silicon [the Chip] does support ZigBee IP," but Defendant does not "offer this as a supported software product [for customers]." *Id.* (alterations in original). Defendant added that it planned to modify the related datasheet and public information to "make that more clear." *Id.*

Moreover, in August 2014, Defendant allegedly informed Plaintiff as follows:

> [S]ometimes people confuse 6LoWPAN stack (basically IP based stack on top of 802.15.4) with ZigBee IP, which is an IP stack (still over 802.15.4) [that] specifically target[s] . . . Smart Grid application and the CSEP SE2.0 profile. While we see little traction in the market [for ZigBee IP], we do see market traction for 6LoWPAN . . . .[1]

*Id.* ¶ 25. Yet, in contrast to this representation, Defendant allegedly continued touting the ZigBee IP feature of the Chip in its "Wireless Connectivity Guide" (dated 4Q 2014). *Id.* ¶ 26. Specifically, Defendant made the following misrepresentations in the Wireless Connectivity Guide:

- "[Defendant] is the lead technical editor for the next generation [Zigbee] IP based protocol stack";

- "[Defendant] provides complete and free software solution on various platforms";

- "[Defendant] provides extensive development tools, application support, reference designs"; and

- "The CC2538 is a cost-effective, low-power, and full System-on-Chip (SoC) solution specifically tailored to IEEE 802.15.4 point-to-point, star, and ZigBee PRO mesh network advanced applications as well as ZigBee IP Smart Energy 2.0 applications."

*Id.* ¶ 26 (second alteration in original). Plaintiff alleges these representations were intended to induce Plaintiff into purchasing more chips and prevent it from discovery Defendant's previous fraudulent conduct. *Id.* As a result of the Chip's alleged failure to operate as expected, Plaintiff could not fulfill

---

[1] "802.15.14 is the uniform protocol established by the Institute of Electrical and Electronics Engineers for the hardware, or radio component, of microcontrollers that permit short range wireless communications. It is the uniform hardware component of the Chip that the software application uses to communication." Mot. 5 n.5.

3

its contractual obligations with Cerber Fire Security, and Plaintiff was forced to terminate its agreements with Systemel and Telkom-Telmor. *Id.* ¶ 31.

Plaintiff filed this action on April 19, 2018, bringing claims for breach of warranty and fraud. *See* ECF No. 1. On March 28, 2019, the Court dismissed the fraud claim without prejudice. *See* ECF No. 38. On October 21, 2019, Plaintiff filed its Third Amended Complaint ("Complaint"), which again alleges a cause of action for fraud. *See* ECF No. 79. Defendant now moves to dismiss the fraud claim pursuant to Rules 12(b)(6) and 9(b) for failure to state a claim.

## II. ANALYSIS

Under Texas law, the elements of common-law fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)). Defendant attacks only the third element, arguing that Plaintiff failed to adequately plead scienter.

When a complaint alleges fraud, the plaintiff must plead the elements of its claims with the heightened particularity required by Rule 9(b). *See, e.g.*, *Coates v. Heartland Wireless Commc'ns, Inc.*, 26 F. Supp. 2d 910, 914 (N.D. Tex. 1998). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally" so long as the plaintiff "set[s] forth specific facts that support an inference of fraud." FED. R. CIV. P. 9(b); *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).

In the present case, Plaintiff's fraud claim is based on two purported misrepresentations: (1) information contained from Defendant's website that claimed, inter alia, that the Chip came

4

with "free to use . . . ZigBee IP stacks from [Defendant]"; and (2) an email from Nowacki that stated, inter alia, that "the connection between CC2538 and CC1200 is entirely possible, as well as the use of ZigBee IP (which does not have to be downloaded from an outside source, but is already preinstalled on the [C]hip)." Third Am. Compl. ¶¶ 14-16, 42-44. Even if those representations were false, however, "[a] statement is not fraudulent unless the maker knew it was false when he made it or made it recklessly without knowledge of the truth." *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 163 (Tex. 1995). Plaintiff relies heavily on three factual allegations to support an inference of scienter: (1) Defendant's admission, months after the alleged misrepresentations, that Defendant "does not permit customers to access its ZigBee IP stack" and that "the related datasheet/public information was 'in line to be modified to make that more clear'"; (2) Defendant is "a self-described ZigBee market leader"; and (3) Defendant's allegedly misleading statements included in its Wireless Connectivity Guide. Third Am. Compl. ¶¶ 23, 26, 45-47. Even viewing the Complaint in the light most favorable to Plaintiff, the Court finds that these allegations are insufficient to create an inference of scienter.

### A. *Actual Knowledge of Falsity*

The Court previously concluded that the first two allegations are insufficient to support an inference of knowledge of falsity because "Plaintiff's pleadings do not connect Defendant's later admission to the earlier misrepresentation." *Cerber Prop. sp. z.o.o. S.K.A. v. Tex. Instruments Inc.*, Civ. A. No. 3:18-CV-0992-S, 2019 WL 1432925, at *3 (N.D. Tex. Mar. 28, 2019). The third factual allegation fares no differently. Indeed, the Wireless Connectivity Guide was published more than a year after Defendant made the alleged misrepresentations. *See* Third Am. Compl. ¶ 26. Therefore, the statements contained therein have no bearing on whether Defendant knew the alleged representations were false when it made them. *See Prudential Ins. Co. of Am.*, 896 S.W.2d

at 163. The same is true with respect to the August 22, 2014 statement regarding 6LowPAN. *See* Third Am. Compl. ¶ 25.

### B. *Recklessness*

Plaintiff also has not pleaded sufficient facts to support its alternative allegation that Defendant acted recklessly when making the alleged misrepresentation. *See* Resp. ¶ 10. "To demonstrate recklessness, the speaker is required to know that he or she does not have sufficient information or basis to support the representation." *Rocha v. U.S. Bank N.A.*, No. EP-16-CV-00417-DCG, 2017 WL 3723679, at *8 (W.D. Tex. Aug. 1, 2017) (citing *Am. Dream Team, Inc. v. Citizens State Bank*, 481 S.W.3d 725, 739 (Tex. App.—Tyler 2015, pet. denied)). "Recklessness may be inferred from surrounding circumstances, existing either before or after a representation is made." *Landers v. Aurora Loan Servs., LLC*, 434 S.W.3d 291, 297 (Tex. App.—Texarkana 2014, no pet.) (citing *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986)).

Texas law distinguishes between recklessness that could support a claim for common law fraud and the separate concept of "negligent misrepresentation." *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 527 (Tex. 1998). In *Kenneco Energy*, the Texas Supreme Court held that an employee's material misrepresentation, while indicative of incompetence, was not reckless. *See id.* The Court clarified that although the employee "should have known that his representation may have been incorrect[,] such evidence . . . is akin to negligent misrepresentation, not fraud." *Id.* (citation omitted). Recklessness, by contrast, requires that an employee know "that he does not have sufficient basis to support [a representation] or . . . [that] he does not know whether or not the statement is true." *Id.* (citation omitted).

Here, Plaintiff's Complaint is devoid of allegations that Nowacki and/or the unidentified maker of the alleged misrepresentations on Defendant's website made those statements "without sufficient information or basis to support [them]." *Rocha*, 2017 WL 3723679, at *8. When

viewing the Complaint in the light most favorable to the Plaintiff, the allegations support a claim for negligence at best. For example, even if Nowacki's representations were false and material, there is no indication that he made a blind guess or otherwise doubted the validity of his representations. *See id.* ("[Recklessness] might apply if Anderson, with no familiarity of the policy language, had told Brown that the coverage applied without consulting the policy itself. It is undisputed that that is not the case."). Although the Court views the Complaint in the light most favorable to Plaintiff on a motion to dismiss, *see Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007), the Court does not accept as true such "unwarranted factual inferences," *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). For those reasons, the Court finds that Plaintiff has not adequately pleaded scienter and grants Defendant's Motion to Dismiss Plaintiff's common law fraud claim.

### III. CONCLUSION

For the foregoing reasons, the Court grants the Motion.

**SO ORDERED.**

SIGNED March  18 2020.

KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE